AMES *v.* HOLDERBAUM *et al.*, (two cases.)

*(Circuit Court, S. D. Iowa, C. D.* November 28, 1890.)

**1. WILLS—VALIDITY—PREFERENCES.**

A testator directed that all his debts should be paid out of the first assets realized, and that his executor should manage his real and personal property so as "to realize the largest and best income therefrom, and in paying off the indebtedness on the land." The executor was given power to negotiate loans and execute mortgages for the purpose of meeting the indebtedness on the land, and to sell a certain portion whenever he could realize enough to pay off the incumbrances. After payment of "all indebtedness and liens on my real estate," the assets remaining were to be divided between the testator's wife and children. *Held,* in a suit to foreclose mortgages given by the executor under the power, that the will did not attempt to create a trust for the payment of debts secured on the real estate in preference to the unsecured debts, and that neither the will nor any part thereof was void because in violation of the rights of creditors, each of whom had the right to pursue his statutory remedy for the collection of his debt, if he chose to do so.

**2. ESTOPPEL—ACQUIESCENCE.**

Creditors of the testator having acquiesced for 10 years in the executor's management of the estate under the provisions of the will, they cannot now question the validity of mortgages executed by him under the authority given.

**3. EXECUTORS—POWERS.**

The power of the executor is not limited to a single renewal of the mortgages in existence at the time of the testator's death, nor to loans made to pay off the original mortgages, but extends to such further renewals or loans as were fairly necessary to enable him to carry out the trust.

**4. SAME.**

The title to the realty passed to the executor for the purposes of the trust, and he had power to make loans and execute mortgages without applying to the probate court for authority.

**5. WILLS—CONSTRUCTION—CHARGE ON LAND.**

The provision of the will that "all my just debts shall be paid out of the first realized assets of my estate" does not charge the payment of the debts on the land, so as to create a lien prior to that of a mortgage given by the executor.

**6. EXECUTORS—MORTGAGES—EXECUTION.**

The mortgages given by the executor named the grantor as "A. C. H., executor of the estate of M. H.," and were signed "A. C. H., Est. M. H." The notes secured read "I promise to pay," and were signed "A. C. H., Executor Estate M. H." *Held,* that the mortgages were the deeds of the executor, and so executed as to bind the property of the estate; the rules relating to the execution of sealed instruments not applying, Code Iowa §§ 49, 2112, having abolished the use of private seals.

In Equity. Bills for foreclosure of mortgages. Submitted on pleadings and proofs.

*Kauffman & Guernsey,* for complainants.

*John Leonard & Son* and *Gatch, Connor & Weaver,* for defendants.

SHIRAS, J. On the 12th day of June, 1879, Michael Holderbaum, then a resident of Madison county, Iowa, executed a will, the material parts of which are as follows:

"*Item* 2. I desire that all my just and equitable debts be paid out of the first realized assets of my estate, including expenses of last illness and funeral expenses.

"*Item* 3. I desire that my executor hereinafter named shall stand in my place and stead, for the purpose of managing and controlling my real and personal property in such a way and manner as to realize the largest and best income therefrom, and in paying off the indebtedness on said real property.

"*Item* 4. I desire that my said executor, for the purpose expressed in item 3, shall have full power and authority to negotiate a loan or loans for the pur-

pose of meeting said indebtedness on said real estate, and to make and execute a mortgage or mortgages on a part of said real estate, and generally to do, and make and execute such paper or papers, as shall or may be for the best interest of said estate, as I might or could do for said purpose, limiting my said executor as to mortgages, so that no new mortgage shall be given on the quarter section known as the 'home place.'

"*Item* 4½. I desire that personal property and proceeds from the real estate be first used to pay off indebtedness, and real estate not to be so used unless my said executor should find that by disposing of a portion of said real estate, not to exceed a half section, (exclusive of the home place,) he could realize enough to pay off all liens on the real estate; then, and in that case, I desire my said executor to dispose of so much of said real estate (exclusive of the home place) as shall pay such incumbrance as may remain unpaid instead of procuring new loans, and in this, as in all matters, to do all for the best interests of the said estate."

"*Item* 5. I desire that the home place, containing one hundred and sixty acres, together with the buildings, farming utensils, two teams of horses, their harness, reaper and binder, and threshing machine, be and remain in the possession and control of my beloved wife, Rachel Holderbaum, for the use of the family as a home, and for their support; any overplus remaining to be used in the payment of indebtedness.

"*Item* 6. After the payment of all indebtedness and liens on my real estate, I desire that my said wife, Rachel Holderbaum, have the full one-third of the assets remaining, unless the said sum should be less in amount than the said homestead; then, and in that case, it is my will that she hold the said homestead, and, if her share is given in land, I desire that she have the full one-third thereof in value.

"*Item* 7. I desire that the remaining two-thirds of my said estate, including personalty and realty, be equally divided between my eight children, namely: Henry D., Michael S., Augustus C., Solomon, Eliza Schlarb, Sophia H., and Lucinda, and the two children of my deceased daughter, Mary Hochstetler; except that I have advanced Henry D. one thousand dollars, and Michael S. one thousand five hundred dollars, which is to be considered in said division, and except my son Solomon, whom I desire to have and receive five hundred dollars more than his proportionate share of my said estate.

"*Item* 8. It is my further will that, should any of my children die without issue, the share that would go to them should be equally divided among the brothers and sisters; and, if my said wife should not be living at the time of such division, then I desire that the estate be equally divided among my said children, or their representatives, subject to the matters stated in item 7 as to the advancement and the extra amount to Solomon.

"*Item* 9. Reposing full confidence in my son Augustus C. Holderbaum, I desire him to act as my said executor for this, my last will and testament, and that he be duly appointed as such executor without being required to execute any bond as such executor."

Michael Holderbaum died on the 21st day of June, 1879, being then seised of some 1,120 acres of land in Madison county, on which rested mortgages to the amount of some $15,000 and over. His will was duly admitted to probate in the proper court, and the executor named therein entered upon the discharge of his duties as such executor. On the 28th day of January, 1887, a loan was negotiated with one Wilson Ames, of Chicago, Ill., for the sum of $6,000, for which two coupon notes or bonds were given, the principal of which was made payable August 1, 1892, and the payment of principal and interest was secured by the execution

of two mortgages on different portions of the lands owned by Michael Holderbaum at the time of his death. Each note or bond recites that, "On the first day of August, 1892, I promise to pay Wilson Ames, or order, three thousand dollars," etc., and is signed by "AUGUSTUS C. HOLDERBAUM, Executor Estate Michael Holderbaum." The mortgages are as follows: "Know all men by these presents, that Augustus C. Holderbaum, executor of the estate of Michael Holderbaum," etc., and are signed, "AUGUSTUS C. HOLDERBAUM, Est. Michael Holderbaum;" and each contains provisions that, if the interest is not paid when due, the note shall become due in 60 days after such default, and the mortgagee may proceed at once to foreclose the mortgage.

Default in payment of interest having been made, suits of foreclosure were brought by Julia Ames, to whom the notes and mortgages had been assigned by Wilson Ames, the mortgagee. Among others, there were made defendants to the bills for foreclosure W. R. Shriver, administrator of Adam Hochstetler and Josiah Hochstetler, who are creditors of the estate of Michael Holderbaum, and Henry A. and David M. Hochstetler, who are devisees under the will of said Michael Holderbaum. These parties contest the validity of the mortgages sought to be foreclosed, and thus arise the issues presented for determination in these cases.

The first point made is that the mortgages are not so executed as to bind the property of the estate, but must be held to be simply the deeds of Augustus C. Holderbaum as an individual. Under the statutes of Iowa, a deed or mortgage is not an instrument under seal; the use of private seals being abolished. Code Iowa, §§ 49, 2112. It is well settled that in case of instruments not under seal courts may read the instrument in the light of the facts attending its execution, in order to ascertain who it was intended should be bound thereby. *Whitney* v. *Wyman*, 101 U. S. 392; *Hitchcock* v. *Buchanan*, 105 U. S. 416; *Post* v. *Pearson*, 108 U. S. 418, 2 Sup. Ct. Rep. 799. The attending circumstances, as well as the form of the mortgages, clearly show that it was the intent of the parties on the one hand to give, and on the other to receive, mortgages executed by Augustus C. Holderbaum in his capacity as executor, and such they must be held to be.

It is next urged that the testator had no legal right to create a trust or confer a power by will to execute mortgages for the payment of debts, and that the several provisions of the will looking to that end are wholly void. The contention is that the statutes of Iowa forbid any testamentary disposition of property prejudicial to the rights of creditors, and an exceedingly ingenious argument is made for the purpose of showing that such a use could be made of the power to mortgage as that thereby certain creditors might be preferred to the injury of others, and that in fact the will creates a discretionary power in trust for the benefit of a certain class of creditors, to-wit, those holding mortgages on the realty. By sections 2322, 2384, 2406, Code Iowa, it is provided that every person of sound mind and full age may dispose by will of all his property, except what is sufficient to pay his debts, or is allowed as a homestead, or other-

wise given as privileged property to his wife and family; that if a person by will makes disposition of his property prejudicial to the rights of creditors, the will may be sustained by giving security for the payment of the debts equal to the value of the property devised; that when the interests of creditors will not thereby be prejudiced, a testator may prescribe the entire manner in which his estate shall be administered, and the manner in which the affairs of the estate may be conducted, until the same is finally settled, or until the minor children become of age. If the contention of defendants was sustained and carried out to its fullest extent, it would result in the conclusion, that any disposition made by will of a homestead or other privileged property, or in case the testator owed debts, no matter how small in amount, any disposition of any of his property, would be absolutely void; for the creditors have the right to look to all of the property not exempt for the payment of their claims. This is clearly not the law, nor the true meaning of the sections of the Iowa Code above cited. · A person has the right, subject to the paramount rights of parties entitled to claim exempt or privileged property, and of creditors, to make any disposition he deems best of his entire property, subject only to the restriction that the purpose to which it may be devoted is not one contrary to law. The parties entitled to claim the privileged property and creditors have secured to them the rights which the law gives them, and which they may enforce, regardless of the will, or, waiving such enforcement, they may elect to profit by the provisions of the will. A will is not void in whole, nor necessarily in part, because it deals with the disposition of privileged property, or property that may be made liable for the payment of the debts of a testator.

The facts developed in the evidence submitted in this case show that Michael Holderbaum, when he executed his will, owned a large amount of farm property, both real and personal. Upon the realty rested mortgages to the amount of $15,000, or over, representing the large bulk of his indebtedness. It is entirely clear that he believed that with proper management the proceeds of the available personal property, with the profits of the farm, would be sufficient, if time was allowed, to pay off the entire amount of the indebtedness. The general purpose of the will was to provide for the payment of the debts, and, this being accomplished, then to have the property remaining divided between his widow and children. His eldest son was appointed executor, to "stand in my place and stead, for the purpose of managing and controlling my real and personal property in such a way and manner as to realize the largest and best income therefrom, and in paying off the indebtedness on said real property." This is not to be construed, as is argued on behalf of defendants, as an attempt to create a trust or power for the payment of the debts secured on the real estate in preference to the unsecured debts, for in the preceding clause of the will it is declared that—

"I desire that all my just and equitable debts be paid out of the first realized assets of my estate, including expenses of last illness and funeral expenses."

Instead of being an attempt to dispose of the estate in a manner prejudicial to creditors, the will not only provides for the payment of all

debts before any distribution of the estate is made, but it empowers the executor to hold possession of the entire estate, real and personal, and to devote the profits of the realty to the immediate payment of all debts. In the absence of such testamentary disposition of the realty, the same would, under the law of Iowa, have passed at the death of the testator into the possession of the heirs or devisees, and the profits thereof would have belonged to such heirs. All the creditors would have been entitled to would be the proceeds of the personalty, with the right to sell so much of the realty as might be necessary to make up the deficiency; but the right to procure a sale by order of the probate court, after due disposition of the personalty, would not enable the creditors to reach the produce or profits of the realty anterior to the completed sale. In this particular, the will is beneficial, instead of prejudicial, to the interests of the creditors. Fairly construed, there is nothing in the provisions of the will which, upon their face, show any sufficient reason for holding that the will, or any part thereof, is void as against creditors. Any creditor who wished to pursue his statutory remedies for the collection of his debt had the right so to do, and there is nothing in the will that would prevent his taking such action, had he so desired. Furthermore, the will was duly probated in the state court, and the administration of the estate has been proceeded with in that court. It was open to the creditors, defendants herein, to contest the validity of the will in that court, or to invoke the aid of that court for the enforcement of all statutory rights, regardless of the provisions of the will, had such course been deemed advisable. Instead of so doing, these creditors stood by while the executor was dealing with the estate under the provisions of the will, during a period of 10 years, and now seek to question the validity of the will, as well as all that has been done thereunder. It is clear that this long inaction on their part is due to the fact that they were perfectly willing to leave the estate to be managed by the executor, in the belief that he would be enabled to carry out the purposes of the will, and pay off all the indebtedness. If they were willing for years past to leave the control and disposition of the property in the hands of the executor, they must abide by such election, so far as is demanded for the protection of innocent third parties, whose rights have accrued under the will as administered by the executor.

The will in express terms gives "full power and authority to negotiate a loan or loans for the purpose of meeting said indebtedness on said real estate, and to make a mortgage or mortgages on a part of said real estate," etc. It is argued that this power was exhausted when the first loans and mortgages were executed, thus limiting the power of the executor to one renewal or extension of the debts secured on the realty. The express intent of the will was to place the executor in the stead of the testator, and to authorize him to carry on the farm until the indebtedness had been fully paid; and, to aid him in so doing, the authority to make a loan or loans and execute mortgages was given him, so that the time of payment of the mortgaged indebtedness could be carried along until the executor had the funds in hand to meet such indebted-

ness. The purpose of the will, in this particular, was to enable the executor to secure time sufficient to pay the debts from the profits of the business, and the authority to make loans and give mortgages was a means to that end; and such a construction should be given to the means as is fairly necessary to accomplish the end. As is said by the supreme court in *Taylor* v. *Benham*, 5 How. 233, 267:

"Courts, in carrying out the wishes of testators, the pole-star in wills, are much inclined, especially in equity, to vest all the power or interest in executors which are necessary to effectuate those wishes, if the language can fairly admit it. * * * They are inclined, also, when considering it a trust, or a power coupled with an interest, to have its duration and quantity commensurate with the purpose to be accomplished."

The power of the executor in this case is not to be limited to a single renewal of the mortgages in existence at the time of the death of the testator, nor to loans made for the purpose of paying off such original mortgages; but it must be held that such power extended to such further renewals or loans as were fairly necessary to enable the executor to execute the trust imposed upon him by the terms of the will. It is claimed that the will confers only a naked power upon the executor, and that such power must receive the limited construction that usually obtains in such cases. This is not the true construction of the will. It creates an interest in the devisees, of whom the executor is one, and in fact in favor of the creditors, and confers the powers granted to the executor, in order that he might be enabled to protect these interests and discharge the trust imposed upon him for the benefit of the creditors and the devisees. In *Taylor* v. *Benham*, *supra*, it is said by the supreme court, that—

"No doubt exists that a power coupled with an interest may be inferred by obvious implications from the whole will, as the fee not being vested at once elsewhere, and it being necessary to have it in the executors to effect the general design, as well as from the usual course, which is by an express devise to the executors. Nor is it of any consequence how small the interest may be. It is enough if only to distribute the proceeds as here, or to take the rents or use for the benefit of others."

There can be no question that the will in this case confers upon the executor a power coupled with an interest, and charges him with the performance of a trust, and that his authority under the will must be construed in that light.

Equally ill founded is the assumption that the title and beneficial interest in the realty passed at once to the devisees upon the death of the testator. The estate devised was that remaining after the payment of the debts, and, taking the entire will into consideration, it is clear that the title, as well as the control of the estate, real and personal, passed primarily to the executor. It is declared that the executor shall stand in the place and stead of the testator in managing and controlling the real and personal property, with power to execute mortgages, and such other paper or papers as shall be for the best interest of the estate, and with the further power to sell at once a half section of the realty, if by so doing enough could be realized to pay off the incumbrances on the

realty. Furthermore, the will directs the executor to pay all indebtedness and liens before distribution is made of the remainder of the estate to the devisees, and to accomplish this purpose it might become necessary to sell the realty, or portions of it, and this duty would, in such case, devolve upon the executor.

To effectuate the power to sell the realty, or to mortgage it, the title must be vested in the executor, or otherwise he could not well execute the trusts created by the will. It is true that it might be held that the title passed to the devisees, subject to the right of the executor to sell the same in the execution of the trusts, and such a construction may be given to a will, and especially in cases wherein particular realty or the whole is devised to a particular person. In the will now under consideration no such devise is made. Until the debts are all paid, it cannot be known what property will be left for distribution, nor whether it will be in realty or personalty. The will does not devise the realty which the testator might own at the time of his death, subject to the payment of his debts, to certain named devisees, but he directs the executor to pay all debts first, and then to divide what is left, giving "one-third of the assets remaining" to his widow, and the remaining two-thirds to be equally divided between the children. Viewing the will as a whole, it seems to me to be the true construction thereof to hold that the title to the realty passed to the executor for the purposes of the trusts created by the will, and that, under the terms of the will, he had the power to make loans, and execute mortgages for the security thereof, without applying to the probate court for authority so to do.

It is further contended that the will charges the payment of the debts upon the entire property of the estate, by reason of the direction in the second clause thereof,—"That all my just and equitable debts be paid out of the first realized assets of my estate,"—and that thereby the debts became, equitably, a prior lien upon all the property of the estate, and that consequently all mortgages given by the executor would be inferior to such lien.

The charge or equity in favor of creditors created by the will is not limited or defined by a single clause of the will. If the creditors claim rights or equities created by the will, they must be willing to take what the will, fairly construed, intended to give them. Leaving out the homestead, the will intends that all the remaining realty, and the profits derived therefrom, should be used for the payment of the debts, so far as might be needed. This purpose is to be gathered, not from a single clause in the will, but from the will as a whole; and the mode in which the estate was to be managed, including the making loans and giving mortgages therefor, is provided for in the will. In order to secure to the creditors the benefit of the profits arising from the cultivation of the farm, it was necessary that the loans secured by mortgages thereon should be extended from time to time. The will provided a mode for so doing, and the executor, by securing new loans, was enabled to retain control of the realty, and to use the proceeds thereof in the payment of debts. The primary purpose of the will was to provide a means

by which the debts could be paid out of the proceeds of the personalty, and the profits to be derived from the farm business to be carried on by the executor. The executor has for years been engaged in performing the duties required of him by the will, and the creditors have reaped the benefits thereof. To enable the executor to retain control of the realty, it was necessary that the liens thereon should be renewed, for which purpose successive loans were necessary; and, these loans having been procured in the interest of the creditors, it cannot be held that the creditors could reap the benefits thereof, and then assert that the loans were made subject to a prior lien, created by the will for the benefit of the creditors. The fact that the executor has not succeeded in realizing profits enough to pay off the entire indebtedness on the realty, and that it now appears that it might have been better to have sold the realty in the beginning, does not change the rights of the parties. The creditors and devisees were alike content to have the executor undertake the trusts created by the will, and to undertake the management of the farm in the mode therein prescribed, and they cannot now be heard to object to the validity of acts done by the executor under the powers conferred by the will. It must therefore be held that the mortgages in question are valid liens on the realty therein described, and are paramount to any lien, right, claim, or equity existing on behalf of any of the defendants.

It appears in the evidence that the creditors are proceeding in the state court, and have obtained an order for the sale of all the realty, including that covered by the mortgages to Ames. It would seem that by agreement a sale might be had that would convey a clear title, and thus secure the best possible price for the realty, in which event it ought to realize enough to pay the mortgage lien thereon, and also the amount due the other creditors.

In each case a decree will be entered for complainant, adjudging the amount due on the debt secured by the mortgage, for a foreclosure of the mortgage, and sale of the premises therein described.