### COMMISSIONERS OF BROADWAY-MAIN STREET BRIDGE DISTRICT v. QUAPAW CLUB.

### Opinion delivered October 11, 1920.

1. BRIDGES—PROVISION FOR TURNING OVER TO COUNTY.—Special Laws 1919, p. 74, creating an improvement district for constructing two bridges across the Arkansas River at Little Rock, provides (in § 23) that "when said bridges have been completely paid for they shall be turned over to the county of Pulaski, and from thenceforth shall be the property of said county." *Held* not invalid as depriving the property owners in the district of their property rights in such bridges.

2. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTE.—A statute should be so interpreted as to be constitutional, if consistent with its language.

3. BRIDGES—ACCEPTANCE BY COUNTY COURT.—Special Laws 1919, p. 74, § 23, providing that the two bridges therein provided for, on completion, should be turned over to the county, is not unconstitutional as compelling the county court to accept the bridges.

4. BRIDGES—MAKING OF CONTRACT BEFORE DETERMINATION OF BENEFITS.—While a contract for local improvements does not become effective until the benefits are determined, equity will not enjoin the letting of a contract before such benefits are ascertained.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*George Vaughan* and *J. M. Moore,* for appellants.

1. Act 49, Acts 1919, p. 74, is not unconstitutional or void because it provides that the bridge shall be turned over to the county when completed. 96 Ark. 410. The act is valid and operative. 100 Ark. 178; 66 *Id.* 477.

2. The bridge was part of the highway. The State has absolute control of it and may delegate the control to any subordinate governmental agency. 1 Elliott on Roads and Streets, pars. 511-514, 540; 102 U. S. 472, 501; 1 Dillon on Mun. Corp. (5 ed.), par. 107. See 207 U. S. 161, 178-9. Bridges ·of the county are public bridges, parts of the public highway, and are not within the provisions of the contention which prohibit private property from being taken for public use. 18 N. J. Eq. 93; 48 L. R. A. 486-7; 140 U. S. 334-9; 196 *Id.* 539, 550; 199 *Id.* 233, 240.

3. If section 23 of the act is void and inoperative, the bridges would simply remain under the control of the commissioners of the district. The provisions of section 23 are separable from other parts of the act, and the remaining provisions of the act would not be affected.

4. The letting of the contract was not premature. 106 Ark. 39-48; 119 *Id.* 196. This case does not fall within the ruling in 117 Ark. 93. The use of the bridge is exclusively public and subject to the control of the State.

*Ashley Cockril* and *H. M. Armistead,* for appellee.

1.   Letting the contracts for construction before assessing the benefits rendered the act void.

2.   The act is unconstitutional and the provisions of section 23 are void unless the county court orders them carried out.   117 Ark. 93.

McCULLOCH, C. J.   The General Assembly of 1919 (regular session) enacted a statute creating a local improvement district designated as "Broadway-Main Street Bridge District of Pulaski County," to provide for the construction of two bridges across the Arkansas river at Broadway and at Main streets in the city of Little Rock.

Appellee owns real estate within the boundaries of the district and instituted this action in the chancery court of Pulaski County to enjoin proceedings under the statute, which is assailed as unconstitutional.   The sole point of attack on the validity of the statute is directed to section 23, which reads as follows:

"Section 23.   When said bridges have been completely paid for, they shall be turned over to the county of Pulaski, and from thenceforth shall be the property of said county."

The contention is that the provision in this section is void, and that it is so inseparably connected with the scheme provided in the statute as a whole that it renders the whole invalid.   It is insisted, in the first place, that this provision is void because it deprives the property owners in the district of their property rights in the bridges to be constructed.   In other words, it is argued that the owners of real property in the district have rights in the property of which they can not be deprived by having the bridges turned over to the county.   Counsel for plaintiff rely on the case of *Augusta* v. *Smith,* 117 Ark. 93, as sustaining their contention that the owners of real property in a local improvement district have property rights which can not be transferred without their consent.   This is an erroneous interpretation of the effect

of the decision in that case. There a local improvement, a system of waterworks in the incorporated town of Augusta, was taken over by the city council pursuant to statute and subsequently the council undertook to sell and did sell the waterworks to an individual to operate for profit. We held that under the statute the incorporated town took over the waterworks, not as the private property of the town, but as trustee for the people of the district, and that there was no authority for the town to treat the property as private ownership and sell it to an individual. It is true we said in the opinion that the owners of the property in the district were the real owners of the improvement, which meant that they had rights in the property of which they could not be deprived by a sale to another for private purposes. There is nothing in that opinion to warrant the conclusion that it is beyond the power of the Legislature to authorize a transfer of the improvement to any public agency to operate for the benefit of the owners of the property in the district. In fact, we inferentially upheld the statute which provides that waterworks constructed as a local improvement in a city or town could be taken over by the municipality and operated. The statute now under consideration authorizes the turning over of the property to the county, which is a public agency and does not disturb the rights of the public or of the property owners within the boundaries of the district.

The principal attack on the validity of this provision of the statute is on the ground that it compels the county court to take over the bridges, and therefore constitutes an encroachment upon the constitutional jurisdiction of the county court over roads and bridges. Counsel rely on the case of *Road Improvement District v. Glover,* 89 Ark. 513, where we held that a statute which authorized an improvement district to establish and improve new roads and imposed them upon the county court to maintain as public roads was void as an encroachment on the jurisdiction of the court. An interpretation of this section of the statute in connection with other parts of the

statute leads to the conclusion that it was not the intention of the lawmakers to make it compulsory upon the county court to accept the bridges as a part of the public highways, and to impose upon the county court, against its judgment, the maintenance of these structures.

It is true that the language of the statute constitutes an imperative command to the district to turn the bridges over to the county court, and the commissioners are not left with any discretion in that respect, but it is not compulsory on the county court to accept the bridges. That is still left to the constitutional power of the county court in its control of bridges and public highways. We ought to indulge the presumption, in the absence of positive language to the contrary, that the framers of the statute did not intend to encroach upon the constitutional jurisdiction of the county court, and it is our duty to interpret the statute, so far as is consistent with its language, to avoid a meaning which would render it unconstitutional. *Sallee* v. *Dalton,* 138 Ark. 549.

The fact that the statute is based on the assumption that the county court will accept the bridges and that no provision is made for maintenance in the event of non-acceptance does not evince a purpose to impose acceptance nor does it render the statute invalid. The scheme to construct the bridges is valid, even though further legislation might become necessary to provide for maintenance.

This view of the matter that the Legislature did not intend to encroach upon the jurisdiction, but, on the contrary, recognized the authority of the county court, is supported by other provisions of the statute. In the first place, the preamble of the statute recites the fact that two improvement districts had already been formed for the purpose of aiding in the construction of these bridges, but that the county had not been able to raise the funds to build the bridges even with such assistance. Section 1 recites the contracts entered into by Pulaski County and concessions and grants made to the county for the construction of these improvements under the

prior organization and provides that they shall inure to the benefit of this district. Section 2 requires the commissioners to file the plans and specifications for the improvement and the estimated cost with the clerk of the county court, which implies authority on the part of the county court to pass upon those plans. The county court is further authorized to levy assessments made by the board of assessors. These various provisions show a distinct recognition of the authority of the county court, rather than an attempt to encroach upon the constitutional jurisdiction of that court. We conclude therefore that the provision in section 23 is not compulsory upon the county court and does not constitute an invasion of its jurisdiction.

It is also alleged in the complaint that the commissioners have let a contract for the construction of the improvement, prior to the assessment of benefits, so as to ascertain whether or not the cost of the improvement will exceed the benefits. That question as presented in this case is ruled by our decision in *Cherry* v. *Bowman*, 106 Ark. 39, where we held that a contract for a local improvement did not become effective until the benefits were determined, still a court of equity would not afford relief unless there was an attempt to proceed under the contract prior to the ascertainment of the benefits.

These are the only questions involved in this litigation, and we find that the grounds of attack made by the plaintiff are untenable. The decree is, therefore, reversed and the cause remanded with directions to proceed in accordance with this opinion.

HART, J. (dissenting). Where the language of a statute is plain and unambiguous, there is no room for construction. It construes itself, and courts can not go further and apply other rules of interpretation.

Section 9 of the act, providing for the creation of the bridge districts, provides that the commissioners may issue bonds for the payment of the bridges which may run for thirty years.

Section 23 reads as follows: "When said bridges have been completely paid for, they shall be turned over to the county of Pulaski, and from thenceforth shall be the property of said county." Special Acts of 1919, p. 74.

It will be noted that the act places the bridges in the hands of the commissioners until completely paid for and also provides for the issuance of bonds which may extend over a period of thirty years. This would give the commissioners control over the bridges for thirty years in plain violation of art. 7, § 28, of the Constitution, which provides that the county courts shall have exclusive original jurisdiction over bridges.

In the next place, the majority opinion says that the language of the statute constitutes an imperative demand to the commissioners to turn the bridges over to the county court, and that they are not left with any discretion in that respect. The court gravely adds, however, that it is not compulsory upon the county court to accept the bridges. It would be a vain and useless act to command the commissioners to turn the bridges over to the county without imposing a corresponding obligation upon the county court to accept them. However, as if to place the matter beyond cavil, the section concludes with these words, "and from thenceforth shall be the property of said county." "Thenceforth" means from that time forward. So that the section in plain terms commands the commissioners to turn the bridges over to Pulaski County, and provides that from that time on they shall be the property of the county. It is difficult to see how plainer language could be used to invest the county with the title to the bridges. The act in question construes itself, and the court should not depart from the construction afforded by the plain language of the act. The evils of judges moulding a statute or a section of the Constitution to meet a public convenience, or an alleged public necessity, has been often made the subject of judicial utterance.

In *Reed* v. *Erie*, 79 Penn. St. 346, C. J. Agnew, with prophetic vision as applied to conditions existing in this

State, warned against the dangers to property rights of legislative encroachment upon the Constitution, and emphasized the duty of courts to protect such rights by a strict construction of sections of the Constitution and of statutes dealing with private property. The learned judge said:

"The right of private property is too sacred, and too carefully guarded by the Constitution to be blown away by any loose or equivocal utterances. The doctrine of local taxation for benefits conferred by public improvements, beginning in a modest way, for purposes of real utility, was found advancing by stealthy steps and unobserved, until an impression began to prevail that private property had no protection against public needs. This court has been compelled to meet and check this dangerous advance, in the cases of *Hammett* v. *The City of Philadelphia*, 15 P. F. Smith 146, and *Washington Avenue*, 19 *Id.* 352. But, notwithstanding this check, this doctrine of local taxation for benefits received has reached a perilous advance, sanctioned by many laws and decisions. We may now travel for miles in the rural districts of large cities, where broad paved and curbed streets of the most costly kinds have been paid for at private expense, under arbitrary exactions. The power has become flagrant, often engulfing the entire value of the property of small land holders. Speaking for myself, I believe no exercise of legislative power needs constitutional guards more than this, and I regret that it was not thought of in the recent convention. If the little all of men of moderate means can be taken to gratify a taste for expensive improvements, or the mere desires of the more wealthy, or to fill the ravenous maws of contractors and public jobbers, on the pretence of public right, such persons had better flee from large towns and cities to places of safety far away from these oppressions."

The provision of the Constitution under consideration was adopted by the people; and it was designed to confine in one jurisdiction the control of roads and

bridges to the end that there might be uniformity in their construction and maintenance. The section conferring original jurisdiction over to the county court over roads and bridges was intended to have a definite and fixed meaning which neither time nor conditions could change.

Therefore Judge WOOD and the writer respectfully dissent.