BROWN *v.* WATERWORKS IMPROVEMENT DISTRICT No. 1, OF FORT·SMITH.

Opinion delivered March 7, 1921.

WATERS AND WATERCOURSES—AUTHORITY OF WATERWORKS DISTRICT TO MORTGAGE PLANT.—Under Special and Private Acts 1911, No. 158, providing, in § 1, that the Waterworks Improvement District No. 1 of Fort Smith is authorized to take title to the entire waterworks plant of the Municipal Waterworks Company, and to mortgage the same, and in § 2, that the city of Fort Smith was authorized to use the income for the purpose of paying principal and interest on purchase-money bonds, the plant, though mortgaged for the purchase price, may also be mortgaged to raise funds for its maintenance.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; affirmed.

*Daniel Hon,* for appellants.

There is no law or statute in this State that authorizes Waterworks Improvement District No. 1 to place any incumbrance on the waterworks plant without legislative authority, and the mortgage was in violation of article 19, § 27, Constitution, and void, and the maintenance and upkeep of the plant must be performed by the city of Fort Smith, which is operating the plant, under Kirby's Digest, § 5675; Act 158, Acts 1911. The statutes only provide for one assessment, except that § 5716, Kirby's Digest, provides that, if the first assessment is insufficient to complete the improvement, the board shall report the deficiency to the city council and it shall enter an assessment for the sum sufficient to complete the improvement. See, also, Kirby's Digest, §§ 5720-1, 5664. See 109 Ark. 99; 50 *Id.* 116; 112 *Id.* 259. Defendants were without power to execute the mortgage, and the court erred in refusing the relief prayed by plaintiffs.

The district was without authority to make the repairs or borrow the money.

*Dailey & Woods,* of counsel for appellants.

*A. A. McDonald* and *J. B. McDonough,* for appellees.

1. The Waterworks District of Fort Smith, under the facts, stands in a class of its own. It has power to maintain the works and the power to mortgage. The money to make repairs and replacements was used to pay bonds and interest, and, under the act, one exercise of the power to borrow money did not exhaust the power. 44 Fed. 224; 86 Iowa 1. Act 158 gives the power to borrow money, and it did not restrict the district to a single mortgage. This case falls within the rule. 217 S. W. 795.

2. Even if the district is without power to "maintain" the system of waterworks, nevertheless, under the law and the facts, it has the power to mortgage the plant as security to repay the money, thus enabling the city to maintain the system. Kirby's Digest, § 5675;

act 158, Acts 1911; 117 Ark. 93. See, also, 70 N. J. L. 98; 170 Ind. 113; 89 N. J. L. 418.

3. The borrowing of $200,000 by the Waterworks Improvement District No. 1 did not call for or require any additional assessment against the property in the district.

4. The improvement district has ample power under the law to borrow the money and secure its repayment by the execution of the mortgage. From the undisputed facts and what has been stated before, it is clear there is no violation of article 19, § 27, of the Constitution, and the board has power to execute a second mortgage. 109 Ark. 90; 50 *Id.* 116; Acts 1911, p. 415; 160 Cal. 30; 161 Pac. 722; 71 S. E. 654; 88 Ia. 154. Under act 158, Acts 1911, and also prior acts, the district had power to mortgage the water system to secure money to build and maintain the system.

5. The power of Waterworks Improvement District No. 1 to mortgage the water system is not taken away, under the facts of this case, by Kirby's Digest, § 5675.

6. There is no showing in the record that the improvements contemplated are anything other than a part of the original plans. 218 S. W. 381, did not decide the questions raised here.

7. The district was organized to acquire and maintain. 118 Ill. 446; 151 Ill. 634; 140 Mass. 329; 16 Okla. 436; 101 S. W. 414; 133 S. W. 953; 170 U. S. 744.

8. We also rely on the doctrine of estoppel. 117 Ark. 93; 131 *Id.* 77; 150 *Id.* 116.

9. The city is not borrowing money, and is not issuing interest-bearing evidences of indebtedness.

WOOD, J. The appellant instituted this action against the Waterworks Improvement District No. 1 of the city of Fort Smith, Arkansas (hereafter called district) and the commissioners of the city of Fort Smith, who were also ex-officio commissioners of the district. He alleged that the district was duly established

by ordinance of the city council of the city of Fort Smith, February 4, 1907; that a board of improvement and a board of assessors for the district were duly elected; that on January 6, 1911, an assessment was duly made on the real estate in the district; that on April 3, 1911, an ordinance was duly passed transferring to the district an option, which was then held by the city of Fort Smith, to purchase a waterworks system of the Municipal Waterworks Company (hereafter called company), then owning and operating a waterworks plant in the city of Fort Smith; that by special act No. 158 of the General Assembly of the State, approved March 30, 1911, the district purchased and took title to the waterworks plant formerly owned by the company, and to secure money necessary to pay the company for the plant and to make further improvements contemplated, the district mortgaged the plant to the Mercantile Trust Company for $750,000, of which amount still remains unpaid the sum of $664,000; that the city, in the transfer of its option to the district, reserved the right and has the right by law, and is now operating and maintaining the waterworks system, and under act No. 158 of the Acts of 1911, was using the revenues from the waterworks to pay the debt to the Mercantile Trust Company in addition to the use authorized by section 5675 of Kirby's Digest; that the commissioners of the district, pursuant to a resolution passed by them and an ordinance of the city of Fort Smith, were about to issue bonds in the sum of $200,000 and to mortgage the waterworks plant to secure said sum in order to make certain improvements, reconstructions and enlargements; that these improvements were no part of the original plans of the district and should be made and maintained by the city alone; that assessments for these improvements were not authorized by law nor by consent of the majority of the property owners in the district and were, therefore, in violation of article 19, section 27, of the Constitution.  The appellant alleged that he was a landowner and taxpayer in the district, and he

instituted the action in behalf of himself and all other interested property owners of the district, and he prayed that the appellees be enjoined from creating a debt against the district and issuing bonds and mortgaging the property of the district to secure the payment of the same, and for all proper relief. The resolution of the commissioners of the district setting forth the necessity for the improvements and the issuance of bonds, and the ordinance of the city authorizing the district to issue bonds in the sum of $200,000 to raise money for the improvements set forth in the resolution of the commissioners of the district and to mortgage the property of the district to secure the payment of the same, were made exhibits to the complaint.

The appellees, the district, and its commissioners filed separate answers in which they denied that they are intending to enlarge the waterworks plant, but allege that they intend only to maintain it up to the standard of efficiency required by the obligations of the mortgage and pledge to the Mercantile Trust Company. They deny that the improvements contemplated in the organization of the original district were all completed and allege that the improvements now contemplated are a necessary part of the original plant, although to some extent they increase the original plant. They deny that it is the duty of the city to make the improvements now contemplated. They deny that the borrowing of the money and the issuance of a mortgage and pledge to secure the payment of the same will incumber the property of the district illegally and unlawfully, and allege that the borrowing of the money will enable the district to fulfill its obligations to the first bondholders and keep the water plant in proper condition and up to the standard of efficiency required. They set up that, without objection of any property owner in the district, the revenues of the district had been used in part payment of the purchase money of the waterworks plant; that no installments of assessments had been made since installment No. 1; that

during the time that these installments were not made, the city had collected $397,000, net revenues, from the waterworks system, which, with the consent of all property owners of the district, had been used for the purpose of paying the principal and interest on the purchase money bonds. It was alleged that in the mortgage and pledge of the district to the Mercantile Trust Company for the purchase money, the district obligated itself to maintain the waterworks system in good condition. It was denied that the city, under the transfer of title of the waterworks system to the district, reserved the right to use the income and revenues of the waterworks system for the payment of the purchase money, and denied that the district or the city had any right or power to waive the collection of the assessments, and alleged that the $397,000, revenues from the waterworks system, should have been applied to the making of improvements necessary to keep the plant in good condition and repair; that, as a result of the payment of this sum on the purchase money bonds instead of necessary repairs, it was now necessary for the city to expend approximately $200,000 for that purpose; that the city had no title to the waterworks plant, and, in order to raise the money to make these necessary improvements, the district would have to mortgage its plant, as the city had no title to the property.

It is averred in the answers that under act No. 158 the district has power to borrow money to make these improvements which are indispensable to the welfare of the city. It is also alleged that the city, during the time it had operated the waterworks system, had not paid the district any sum for hydrant rentals, and that such rentals exceeded the sum of $110,000. It is also alleged that the property owners in the district were estopped by permitting the installment of assessments to go uncollected and by allowing the city to use the revenues from the waterworks plant to pay off the purchase money bonds instead of making the necessary improvements to

the waterworks system, thereby endangering the life and health of the citizens of Fort Smith as well as the property in the city.

The city filed a separate answer, and adopted as far as applicable the answer of the district, and alleged that the title to the waterworks plant was in the district; that it had power to mortgage the plant and consented that it do so in order to raise the necessary funds to make the repairs and improvements set out in the answer of the district. It also alleged that it had no funds with which to make these improvements and repairs, and that its revenues from the waterworks system had been used by the city to pay the purchase money bonds and interest. The proceedings of the city council showing the creation of the district were set forth in the answer.

The cause was heard upon the pleadings and the exhibits thereto and the documentary evidence and the agreed statement of counsel. All the proceedings of the city council creating the improvement district were in evidence, showing that it was established for the purpose of constructing or acquiring and maintaining a waterworks plant in the city of Fort Smith. It is shown that the estimated cost of the improvement was $1,200,000; that there had been an assessment of benefits of $1,255,-103. It was also shown that the city transferred its option to purchase the waterworks system to the district under authority of act 158 of the Acts of 1911. It was prescribed in the ordinance making the transfer that the plant was to be operated by the city as provided by section 5675 of Kirby's Digest. Act 158 referred to was introduced in evidence. The mortgage of the waterworks plant by the district to the Mercantile Trust Company for the sum of $750,000 was also introduced in evidence. This mortgage shows a loan of $750,000 to the district and recites the issuance of 750 bonds by the district in the denomination of $1,000 each, bearing interest at the rate of 7 per cent. per annum. There is a recital in each of these bonds as follows: ''This bond is issued for the

purpose of acquiring and extending a waterworks system for supplying said city and its inhabitants with water for public and private use." One of the provisions of the mortgage was that the district was required to keep insurance on the property and keep the premises in a good state of repair, and another provision pledged to the Mercantile Trust Company "all rents, issues and profits of the property acquired by or from the operation of its system of waterworks, and all uncollected assessments that had been levied or that might thereafter be levied on the real property of the district."

The resolution of the district in its preamble set out at length the history of the waterworks plant at Fort Smith and the proceedings under which and the purposes for which it was acquired by the district. It is shown that it was necessary to make extensive repairs, replacements and improvements in order to keep the waterworks system efficient; that the district and the city had determined that these improvements should be made according to the report of a consulting engineer, which states specifically and in detail the various improvements, machinery and replacements that were necessary to be made, together with an itemized statement of the cost of same. His report, among other things, states that the new water supply works were completed and placed in operation in 1913 and have been in continuous use without additions or extensions to the present time. It shows that neither the district nor the city had any funds with which to make the improvements.

The preamble to the ordinance of the city of Fort Smith, passed December 4, 1920, sets forth practically the same facts as were set forth in the preamble to the resolution of the district, and the ordinance authorized the district to issue bonds in the sum of $200,000, which bonds were to be a lien upon the entire waterworks system of the district and the income derived from the operation of the plant subject to the first mortgage of the Mercantile Trust Company for the balance due, which

was $664,000; and also authorized the district to execute a mortgage on its waterworks plant to secure the payment of the bonds. The ordinance also binds the city for the purpose of securing the loans and to make the payments in the amounts and at the dates fixed for such payments, and authorized its officers to execute all obligations that might be necessary to carry out the provisions of the ordinance. There was introduced in evidence a resolution adopted by the commissioners of the district to borrow the sum of $200,000 at such rate of interest, and upon such terms as may be provided by law, fixing the payments and authorizing the issuance of interest-bearing bonds to cover the amount of the loan, and agreeing to mortgage the waterworks plant and all uncollected assessments on the real property in the district for the payment of the same, subject to the first mortgage of the Mercantile Trust Company. There was a stipulation of counsel in evidence to the effect that there was no express consent of the property owners in the district to the noncollection of assessments, and stating that every property owner knew that the assessments were not being collected and knew that the net revenues of the waterworks plant were being applied to the payment of the first mortgage bonds and interest; that the collector of the district, during each of the years, in keeping his books wrote in the books opposite each tract or parcel of lands the words, "Paid by the city;" but the city, as a matter of fact, never paid any of the assessments, nor were they collected by the district, and the collector had no authority either from the district or the city to make the above entry on his books. The stipulation showed that two old boilers of the waterworks system were to be kept and held in reserve for use in case of an emergency which might arise at any time.

The court found the issues of fact and law in favor of the appellees and rendered a decree in their favor dismissing the complaint for want of equity and for costs, from which decree is this appeal.

As shown by the petitions of the original property owners, the district was created for the construction, acquisition, operation and maintenance of a waterworks system for the city of Fort Smith. The real purpose of the district was, not the building of a waterworks system, but to acquire from a private owner a waterworks system already constructed and to extend, operate and maintain the same for the use and benefit of the inhabitants of the city of Fort Smith.

Section 5739, Crawford & Moses' Digest, provides that, "in case of the construction of waterworks * * * by any improvement district or districts, the city or town council, after such works are constructed, shall have full power and authority to operate and maintain the same, instead of the improvement district commissioners." Act of April 12, 1893. Appellant contends that, under the above section, after the waterworks system was acquired by the district the full power to operate and maintain the same was in the city, and that the district therefore had no power to mortgage the waterworks plant to make repairs, replacements, etc., such as are contemplated by the proceedings which appellant here seeks to enjoin. Appellant urges that there is no authority in the Constitution or statutes for mortgaging the waterworks plant, and to sustain his contention he relies upon the cases of *Rector v. Board of Improvement,* 50 Ark. 116; *Improvement Dist. No. 1 of Wynne v. Brown,* 86 Ark. 61; *Sembler v. Water & Light Improvement Dist. No. 2,* 109 Ark. 90; *Augusta v. Smith,* 117 Ark. 93; *Road Improvement Dist. v. Toler,* 130 Ark. local citation, 416; *Arkansas Light & Power Co. v. Paragould,* 146 Ark. 1; *Easley v. Patterson,* 142 Ark. 52; *Commrs. of Broadway-Main Street Bridge Dist v. Quapaw Club,* 145 Ark. 279.

Without reviewing these cases *seriatim,* it suffices to say we do not consider any of them applicable to the facts of this record for the reason that section 5739 of the general statutes, which controls generally as to operation

and maintenance of improvement districts must be read in connection with act 158 of the Special Acts of 1911, under which this district acquired the waterworks plant from the company which the city of Fort Smith is to operate and maintain. Section 1 of that act provides that "the Waterworks Improvement District No. 1 of the city of Fort Smith, Arkansas, is authorized to take title to the entire waterworks plant of the Municipal Waterworks Company under the decree of the United States Circuit Court for the Western District of Arkansas, and to mortgage the same." Section 2 provides that the "city of Fort Smith, Arkansas, is authorized to use the income arising from said waterworks for the purpose of paying the principal and interest on the bonds issued by the Waterworks Improvement District No. 1 of said city to raise funds for the purchase of said plant in addition to the use authorized by section 5675 of Kirby's Digest."

This act must be construed in the light of the history of the creation of the district and the purpose for which it was established as shown by the pleadings, the resolutions of the district, the ordinance of the city, and the stipulation of counsel. When these are all considered, the uncontroverted facts clearly show that this district is in a class to itself, and clearly differentiate it from the districts in the cases *supra* upon which counsel for appellant relies. It will be observed that the first section of the act authorized the district to take title to the waterworks plant and *to mortgage the same.* The contention of learned counsel for appellant that the only purpose of the power to mortgage given under the act was to secure the purchase price is plausible. Undoubtedly, that was one purpose, but is it the only purpose? The act does not say so. No such restriction can be found in the language of the act. On the contrary, the power to mortgage is without any such limitation, and as to whether or not the Legislature intended to place such a limitation upon the power to mortgage must be gath-

ered from a consideration of the particular words under review, when taken in connection with the immediate context and the language of the entire act, keeping in mind the subject-matter of the legislation and the end to be accomplished thereby. See *Board of Improvement Dist. No.* 60 v. *Cotter,* 71 Ark. 556; *State* v. *Handlin,* 100 Ark. 175; *McDaniel* v. *Herrn,* 120 Ark. 288, and other cases collated in 4 Crawford's Digest, p. 4677, § 54.

Special acts are usually passed to effectuate the purpose of those who bring to the attention of the lawmakers the objects to be accomplished by the special legislation. The mortgage and bonds that were issued soon after the passage of act 158, *supra,* show by recitals contained therein that the purpose to be subserved in the passage of act 158 was not merely the purchase of the waterworks system, but for the purpose of extending same. It is so nominated in the mortgage and bond, which would reasonably include the improvements that are specified in the proceedings here sought to be enjoined.

Now, before act 158, *supra,* was passed, the Legislature must have ascertained the purpose for which the district was created as shown by the proceedings by which it was established. The Legislature, therefore, knew that the declared object of the property owners and the city authorities was to have the district created and organized for the purpose of acquiring the water system from the private company and having the same extended, operated and maintained for the benefit of the inhabitants of the city of Fort Smith. Such being the purpose of the creation of the district, it occurs to us that the Legislature intended by the broad language, "to mortgage the same," as used in the first section, to give the district the power to mortgage the waterworks plant, not only for the purpose of raising the purchase money on the same, but also to enable it to raise money to aid the city in its maintenance. Such power was certainly germane to the purpose for which the district was created, and was in no

manner in conflict with the power of operation and main-
tenance to be exercised by the city under section 5739 of
Crawford & Moses' Digest. As we have seen, the power to
mortgage was without limitation, and the exercise of that
power for the purpose of securing the purchase money
of the plant in the first instance did not preclude its ex-
ercise also for the purpose of aiding the city in maintain-
ing the waterworks system according to the proper
standard of efficiency. See *Ames* v. *Holderbaum,* 44 Fed.
224; *Iowa Loan & Trust Co.* v. *Holderbaum,* 86 Ia. 1.

The money to be borrowed by the $200,000 bond is-
sue in controversy does not involve any additional as-
sessment against the owners of real property in the dis-
trict, but these bonds are to be redeemed by revenue de-
rived from the operation of the water system. The prop-
erty owners of the district, as we have seen, petitioned
for, and had created, the district to acquire and main-
tain a waterworks system for the city of Fort Smith.
Act 158, *supra,* authorized the district to mortgage, and
the mortgage in controversy is to aid the city to main-
tain, and the bonds are to be redeemed out of the net
revenue of the waterworks system. Therefore, we con-
clude that the proceedings of the appellees, which ap-
pellant here seeks to enjoin, were not in violation of art.
19, § 27, of the Constitution, nor any statute of the
State, and are expressly authorized by act 158, *supra.*
The decree of the chancery court so holding is in all
things correct, and it is therefore affirmed.

McCulloch, C. J., (dissenting). The point of differ-
ence of my views from the conclusion of the majority is
in regard to the interpretation of act No. 158 of the Gen-
eral Assembly of 1911, authorizing the improvement dis-
trict to purchase the waterworks plant from the Munici-
pal Waterworks Company. The district was organized
under the general statutes for the construction of local
improvements and the special statute was enacted to au-
thorize the district to purchase the plant, instead of con-
structing one anew. The statute also contained author-

ity to mortgage the plant, the clear implication being, I think, to mortgage for the purpose of securing the purchase price or for borrowing money to pay the purchase price. Under the provisions of the general statutes (Crawford & Moses' Digest, § 5739), the waterworks, when purchased by the district, passed to the city to operate and maintain. *Improvement Dist. No. 1 of Wynne v. Brown,* 86 Ark. 61. This was clearly the intention of the lawmakers in enacting act No. 158, for section 2 of the act expressly refers to the general statute. Having in mind that the plant would pass to the city for maintenance and operation, the lawmakers provided in section 2 of act No. 158 that the city could apply the revenues arising from the operation of the plant, not only to the payment of expenses of operation and maintenance, but also "for the purpose of paying the principal and interest on the bonds issued by the waterworks improvement district."

The general statute cited above cast upon municipalities the duty and burden of maintaining and operating water and light plants through the agency of improvement districts, and the special statute referred to (act No. 158) clearly recognized the application of that statute to the purchase of the waterworks plant in Fort Smith.

Since it is made the statutory duty of the city to maintain the waterworks and that duty is distinctly recognized in act No. 158, then it is not reasonable to assume that the Legislature meant to authorize the improvement district to mortgage the plant for maintenance purposes. Construing act No. 158 in connection with the general statute (Crawford & Moses' Digest, § 5739), I think it clearly confers authority to mortgage the plant only for the purchase price or for borrowed money to pay the purchase price, and it does not confer continuing power to mortgage for maintenance or extension of the plant. When a water or light plant is constructed and put into operation by an improvement district, control over the

plant passes to the municipality, and the only remaining function for the district to perform is to complete the payment for the improvement—to enforce assessments for that purpose and pay off the indebtedness.