SEBASTIAN BRIDGE DISTRICT v. STATE REFUNDING BOARD.

4-5351                                        124 S. W. 2d. 960

Opinion delivered February 13, 1939.

*James B. McDonough* and *Fred S. Armstrong,* for appellant.

*Jack Holt,* Attorney General and *Leffel Gentry,* Ass't Att'y General, for appellee.

GRIFFIN SMITH, C. J. Sebastian Bridge District sought by mandamus to compel the Treasurer of State, the Auditor of State, and the Bond Refunding Board, to pay its 1938 bond and interest maturities and to refund $1,075 in interest paid by the district April 1, 1938—a total of $45,150. Fagan Bourland, individually and as a taxpayer, and McLoud Sicard, as an owner of bonds, joined in the complaint.

The defendants filed a demurrer, and also answered. In the answer it was alleged that unexpended funds appropriated by Act No. 10 of the Extraordinary Session of 1938 were insufficient to meet the demands made.

The improvement district was organized in 1913 to construct a free highway bridge across the Arkansas river at Fort Smith. Bonds aggregating $1,075,000 in three issues were sold. Principal and interest amounted to $1,458,575, all of which has been paid by the assessed taxpayers except an amount equal to the maturities and interest in question.

Two relief measures were enacted by the 1938 Extraordinary Session of the General Assembly, the purpose in each instance being to extend assistance to bridge improvement districts in those cases where the bridges formed a part of the state highway system. These measures were Acts 9 and 10, approved April 1.

Act No. 9 amended Act No. 183 of 1935 by increasing from $1.50 to $3 the tax on motor vehicles and trailers in the course of delivery from manufacturer to dealer. Under the original Act, revenues from this source were deposited in the state treasury and treated as other motor vehicle license funds. By Act No. 9 it was directed that collections be credited to a new account designated "Bridge Bond Retirement Fund," to be paid to boards of commissioners of bridge improvement districts on order of the State Comptroller. The Comptroller was instructed to procure from such districts, not later than November 1 of each *calendar* year, the amount of interest and maturities accruing on bonds of the respective dis-

tricts "falling due in said calendar year."[1] An appropriation of $150,000 was made for the year ending June 30, 1939, "for the purpose of paying interest and maturities on the bonds of bridge improvement districts coming under the provisions of this Act."

Act No. 10 directed the State Highway Commission, the State Refunding Board, "or any other appropriate body," to ascertain the amount of "outstanding principal and interest for the year 1938 [due] by the several bridge improvement districts in the state; and [to] pay all such principal and interest, when due; provided, however, any of the bridge improvement districts may elect to be paid its part of said fund to apply on past-due bonds."

An appropriation of $300,000 was made from the State Highway Fund, the Toll Bridge Refunding Bond Redemption Account, the Refunding Certificates of Indebtedness Redemption Account, and the Funding Note Redemption Account[2] . . . "or so much thereof as

---

[1] An additional provision in Act No. 9 is: 'If there be not a sufficient sum in the state treasury to the credit of the Bridge Bond Retirement Fund to pay all maturities and interest, . . . then the State Comptroller shall apportion said fund pro rata. . . . If any district so desires and so indicates by its board of commissioners, it may use the money paid to it for any year for the retirement of past-due bonded indebtedness."

[2] The three accounts in the Highway Fund from which the $300,-000 appropriation made in Act No. 10 is taken were created by Act No. 11 of the Extraordinary Session of 1934, approved February 12. The State Highway Fund was to receive the gross toll bridge collections, 92.3 per cent. of the net gasoline tax; all net automobile license fees, and "all other net highway revenues." By "net" was meant the gross collections less cost of collection (toll bridge collections excepted) and certain allowable deductions, notably unpaid checks. All gross collections (other than from toll bridges) went into the unapportioned fund.

With respect to the Highway and Toll Bridge Refunding Bond Redemption Account, it was provided that "Whenever, in any fiscal year, there shall be funds in excess of the amount necessary to pay principal and interest falling due in such year, such excess fund shall be applied by the Refunding Board in the purchase of State Highway Refunding Bonds, Series A and B, and State Toll Bridge Refunding Bonds, Series A and B, and DeValls Bluff Bridge Refunding Bonds, at the lowest price submitted."

is necessary to pay the maturities of principal and interest of bridge improvement district bonds.'' The same bridges and obligations of the same districts are treated by Acts 9 and 10.

By § 3-A of Act 10 it is declared that . . . ''bridges as defined in this Act are integral parts of the state highway system, and the indebtedness due on account of the construction of said bridges is hereby declared to be a just debt of the state.'' [3]

Vouchers and warrants issued against the appropriation made by Act No. 10 amount to $299,850.87. Included in these figures is a voucher in favor of Sebastian Bridge District for $14,765.80.

There was no default of Sebastian Bridge District as to either principal or interest prior to 1938. The voucher for $14,765.80 issued by the state was the difference between 1938 maturies of $44,075.00 [4] and cash on hand of

As to the Refunding Certificates of Indebtedness Redemption Account, it is directed that . . . "any balance [of highway funds] remaining after provision has been made for the next semi-annual interest payments to accrue, shall be deposited" . . . to this special account . . . annually after 1936 in the ratio of one-eighth per cent., "pledged for the payment or redemption of the principal and interest of Refunding Certificates of Indebtedness" issued under provisions of §§ 11 and 12 of Act 11. Section 12 of Act 11 authorizes issuance of Refunding Certificates of Indebtedness in exchange for outstanding certificates of indebtedness issued under authority of Act No. 8 of 1928, and Act 85 of 1931. These two Acts deal with debts of municipal improvement districts in those cases where the streets are continuations of highways.

The Funding Note Redemption Account, after 1936, should, under Act 11 of 1934, receive 1.3 per cent. of highway revenues for payment of principal on funding notes issued to contractors. [While the term "and interest" is used in the statute, as a matter of fact, funds are set aside in the State Highway Fund six months in advance for the payment of interest on the Funding Notes, Refunding Certificates of Indebtedness, Road District Refunding Bonds, series A and B, Highway and Toll Bridge Refunding Bonds, series A and B, and DeValls Bluff Bridge Refunding Bonds.]

[3] The emergency clause of Act No. 10 finds that real estate within the bridge improvement districts is "unjustly burdened with an annual tax"; that such owners of real property "also contribute to highway funds by paying the high gasoline tax," etc.

[4] The voucher issued by the state ($14,765.80) did not include payment of $1,075 made by the district April 1, 1938.

$29,309.20 standing to the district's credit after deduction of the aggregate of outstanding accounts other than bonds and interest had been made.

Appellants insist that the 1938 legislation was for the benefit of taxpayers of the various districts; that by terms of the two Acts, which should be read together, the state assumed bond and interest obligations of 1938, and that the action whereby the district was in effect charged with its net cash balance was arbitrary, and contrary to the purpose of the General Assembly.

Nine bridge districts, under the construction given by the State Comptroller and apparently concurred in by the Bond Refunding Board and Treasurer of State, were affected by the legislation. That an understanding may be had of the manner in which the measures have been administered, it is necessary to show the bases upon which payments were made by the state, and condition of the districts.

Two bridges were constructed by the Broadway-Main Street District. Available records indicate that cost of the Broadway bridge (in Little Rock) was 44½ per cent. of the total expenditures. Total bond maturities, inclusive of principal and interest, formed the basis for computing the relief to which the district would be entitled by reason of the fact that the Broadway bridge is a continuation of state highways, while the Main street bridge is not so classified. The amount so found as aid to which the district was entitled was $53,561.31. Cash on hand and with the chancery clerk was $132,344. Forty-four and one-half per cent. of this sum would be $58,-893.08. The state paid 44½ per cent. of the 1938 maturities without reference to the available cash. Otherwise expressed, no deductions were made.

The Yell and Pope county district had maturities of $16,818.75 for 1938. Cash on hand and in the hands of special collectors was $3,969.38. The state paid the district $16,818.75, making no deduction for available cash.

Bridge Improvement District No. 1 of Independence county (there were two bridge districts in Independence county) had no principal maturities in 1938, but owned

$830 in interest. Available cash was $108.84. Payment by the state did not include a deduction equal to the available cash.

Independence County Bridge District had 1938 principal and interest maturities of $11,525. Cash on hand and with the chancery clerk was $11,923.87. The state's payment was $11,525.

Lee County Bridge District No. 2 had bonds and interest of $11,950 in 1938, and $19,395.83 of defaults. The district's available cash was $5,024.20. State payment was $26,321.63, the available cash having been deducted.

Conway County Bridge District had principal and interest of $3,192.50 maturing in 1938 and default principal and interest of $18,316.67. Cash on hand and with the chancery clerk was $523.85. Accounts payable (other than bonds) was $287.62, the net cash being $236.22. State payment was $21,272.95, the net cash having been deducted.

Jefferson County Bridge District had principal and interest maturities of $54,287.50 in 1938, and default principal and interest brought forward from other years amounting to $96,693.75. Cash on hand and due from the chancery clerk was $24,579.30. There were outstanding notes of $7,431.16. After allowing for payment of the notes and small current obligations, it was assumed that the net cash was $17,148.14. State payment was $133,-833.11, the so-called "net cash" having been deducted.

Whelen Bridge District[5] had no principal or interest maturities for 1938. Default bonds and interest amounted to $21,774.60. Miscellaneous bills payable amounted to $50. Cash available was $902.28. This cash balance was treated as a "net" of $852.28 and was deducted from $21,774.60 and a state payment of $20,922.32 was made.

The quoted figures show that as to Pulaski county (Broadway-Main Street District) $58,893.08 cash apportionable was not deducted by the state in determining the amount the district was entitled to. In the Yell and Pope County District $3,969.38 was left with the commission-

---

[5] The Whelen District constructed a bridge over the Little Missouri river, which separates Clark and Nevada counties. The bridge is a part of Highway No. 53, near the town of Whelen Springs.

ers. The small balance of $108.84 held by District No. 1. of Independence was not charged against bond and interest payments, while in the other Independence county district the state paid $11,525 while at the same time the district had a cash balance of $11,923.87—a sum exceeding by $398.87 the entire bond and interest maturities.

In other districts the cash on hand or available was deducted.

It is urged by appellants that Acts 9 and 10 contemplated only that bonds and interest maturing in 1938 should be paid, and that the state's action, through its ministerial or executive officers in paying accruals of other years, was an illegal diversion of funds appropriated for a specific purpose. Appellees insist that for purposes of the instant suit it is immaterial whether the fund was properly or improperly disbursed; that it is gone, and that mandamus does not lie to compel an officer to do an impossible thing.

We think it is significant that Act No. 9 directs the State Comptroller to ascertain, before November 1, 1938, the total amount of interest and maturities of bonds of the several districts. This determination shall be made for "each *calendar* year," and the report so required is for calendar years. The intent, therefore, was that the same duty should recur with respect to years succeeding 1938. But the appropriation of $150,000 was made "for the year ending June 30, 1939." This is the close of the state's fiscal year. The purpose, then, must have been to make available this appropriation of $150,000 for the payment of bonds and interest accruing during the 1938 calendar year, but as to any surplus thereof, it should be carried forward for use in 1939 and prorated to the districts.

It is our view that the language in Act No. 10 pledging the state to pay "all such principal and interest, when due," was expressive of the legislative intent to assume the 1938 bond obligations, and the fact that some of the districts had funds on hand is immaterial.

Since the relief asked by appellants does not involve an additional taking of revenues appropriated by Act No. 10, drawn from three accounts in the highway fund

pledged by Act 11 of 1934, we do not determine whether the appropriation made by Act 10 is violative of the contracts promulgated by Act 11 of 1934, the obligations of which cannot be impaired.

Revenues arising under Act 183 of 1935, as amended in 1938 by Act No. 9, were not, by any express language, included in the provisions of the 1934 refunding law. They are, therefore, available, to the extent of any unimpaired balance collected during 1938, for the payment of warrants to which any bridge district may be legally entitled.

Since taxpayers of the Fort Smith area have paid more than fourteen hundred thousand dollars for a public bridge, and since Acts 9 and 10 were obviously intended as measures of relief to property owners, we think all bonds and interest maturing in 1938 should have been paid by the state.

In approving payment of bond and interest defaults occurring prior to 1938, the State Comptroller apparently took the view that when the obligations were carried over from one year to another without suit by bondholders to foreclose the liens, there was an implied understanding, or an agreement, for an extension of time. Under this construction it might be said that the accruals were payments falling due in 1938.

We reverse the judgment and remand the cause with directions that mandamus issue commanding the Treasurer of State to pay (to the extent of funds accruing to the Bridge Bond Retirement Fund from collections made in 1938) a sum not to exceed $29,309.20, which is the amount we find to be due in addition to the item represented by outstanding voucher for $14,765.80. This relief does not extend to recovery of $1,075 paid by the district as interest April 1, 1938. It is so ordered.

Smith, J., dissents.