RED RIVER BRIDGE DISTRICT *v.* STATE, EX REL. STATE HIGHWAY COMMISSION.

4-6132                                                  144 S. W. 2d 723

Opinion delivered November 18, 1940.

*Shaver, Shaver & Williams,* for appellants.

*Jack Holt,* Attorney General, *Millard Alford,* Assistant Attorney General, *Frank S. Quinn* and *Herrn Northcutt,* for appellee.

SMITH, J. Act 16 of the acts of 1917—page 78—was "An act to create the Red River Bridge District." This act created an improvement district to construct a bridge through betterment assessments.

Act 178, approved February 18, 1920, (Vol. 1, acts 1920, p. 1463), authorized the district to collect tolls from

the users of the bridge, and to pay its construction cost from the proceeds thereof.

At the Extraordinary 1938 Session of the General Assembly there was passed act No. 3 (acts 1939, p. 1119), entitled "An act to prohibit the collection of tolls on bridges in this state where the commissioners of bridge districts have collected sufficient money to pay all lawful outstanding indebtedness of the bridge districts."

By § 2 of this act No. 3 all such bridges were declared to be free of toll, and to be the property of the state of Arkansas, and should thereafter "be maintained by the Arkansas Highway Department, as is now provided by law."

At the regular 1939 session of the General Assembly there was passed act 174, p. 411, entitled "An act to appropriate surplus funds in the hands of Red River Bridge District for the paving of a highway leading to the bridge at Index, Arkansas."

This act 174 authorized the board of commissioners of Red River Bridge District "to retain all moneys now held by it, over and above whatever such amount as may be necessary to pay the outstanding indebtedness of said district until such time as the State Highway Department shall pave, either with its own funds, or as a Federal Aid project, or as a WPA project, that part of highway No. 71 leading from the north end of the bridge at Index, Arkansas, to Ogden, Arkansas."

Act 174 further provides that when the indebtedness of the district has been paid, and the funds remaining have been expended in improving the above mentioned road, the district shall be dissolved, and its commissioners discharged and released.

A complaint was filed by the State Highway Commission, in which the organization of Red River Bridge District was alleged under the provisions of act No. 16 of the Acts of 1917, and that pursuant to act 178 aforesaid tolls had been collected in excess of the cost of the bridge and of all other indebtedness of the bridge district. It was prayed that this excess be covered into the

state treasury to the credit of the appropriate highway fund.

An answer was filed denying the right of the highway commission to the relief prayed, and the case was submitted to the chancery court upon an agreed statement of facts, in which it was recited: (1) That the state took over the bridge built by the district upon the passage of act No. 3 of the Extraordinary Session of 1938, "and the same is now being maintained, operated and controlled by the State Highway Department as a part of the highway system of the state of Arkansas known as U. S. highway No. 71," and (2) That the commissioners of the district now have on hand $11,000, collected from tolls, and that "all outstanding bonds of said Red River Bridge District have been paid, and all debts owing by the district have been paid."

Upon these facts it was decreed that act 174, *supra,* was a local act, and void for that reason, being violative of amendment No. 14 to the constitution, which prohibits the passage of such local legislation; and the parties concur in that holding.

It was then ordered that "the funds now in the hands of the defendant commissioners and its officers, amounting to the sum of $11,000 be turned over to the plaintiff for the use and benefit of U. S. highway 71 for the maintenance of the bridge across Red River," and the commissioners were ordered to cover said funds into the treasury of the state of Arkansas for said purpose.

The commissioners of the bridge district have appealed from that decree, and, for its reversal, it is argued that the acts creating the bridge district have not been repealed; that the bridge was erected and operated pursuant to the provisions of these acts, and that the commissioners have not been released from the duties imposed by those acts, "and have not been directly authorized to whom they are to pay the funds on hand."

We think the court was correct in ordering the surplus funds covered into the state treasury. The district has fully performed all the functions for which it was

created. The bridge is an essential part of highway 71 —a unit in the state's highway system. The state has assumed the obligation of maintaining and operating the bridge, and it is stipulated that this obligation is being performed, and it must be assumed that the state will continue to perform the obligation it has undertaken.

A different question would be presented had this surplus of $11,000 been accumulated from the collection of betterments assessed against the lands in the district. But it was not. It is the proceeds of tolls collected from persons who used the bridge and paid the tolls demanded, and the return of these tolls is not only impracticable but is impossible.

The cases of *Williams* v. *Fort Smith*, 165 Ark. 215, 263 S. W. 397, and *State, ex rel Attorney General* v. *Little Rock-Highland Paving District No. 24,* 199 Ark. 430, 133 S. W. 2d 878, announce the principles which control here.

In the case first cited a controversy arose over old paving material which was taken up by a new street improvement district, and replaced with new paving. Both the city and the owners of property abutting on the repaired street claimed the old material, and a suit was brought to restrain the city from appropriating the old material to the city's use. The chancery court held that the old material belonged to the city, and, in affirming that decree, it was said by this court that the old improvement district was but an agency for the purpose of constructing the improvement, and that the district had no proprietary interest in the street, and that whatever control it had was given it for the purpose of making the improvement, and that the right of control ceased upon the completion of the improvement. The cases of *Pine Bluff Water Co.* v. *Sewer District,* 56 Ark. 191, 19 S. W. 576, and *Pulaski Gas Light Co.* v. *Remmel,* 97 Ark. 318, 133 S. W. 1117, were cited to support those declarations of law.

It was there further said that the authority of the municipality over a street did not pass away on account of the authority given an improvement district for a special purpose, and that "neither did the taxpayers of

the district, as such, or as abutting owners, gain any proprietary interest in the street, or in the material used by reason of the fact that the improvement was constructed and paid for by taxation on the benefits to adjacent property.''

In the second case cited, that of *State, ex rel. Attorney General* v. *Little Rock-Highland Paving District No. 24, supra,* there was involved the construction of acts 11 and 112 of 1927. Under act 11 the state took over most of the roads in the state which had been constructed by improvement districts, and assumed the payment of the obligations of the districts. Act 112 dealt with the funds of districts whose roads were not wholly included in the state highway system. In construing these acts it was held (to quote a headnote) that ''If the roads of a district are taken over by the state under the authority of act No. 11 of 1927, the funds of the district shall also be turned over to the state; if a part only is taken over, then only a part of the funds are taken on a mileage basis; if no part of the district's roads are taken over, then the state takes no part of the funds on hand.'' In other words, the holding is that, where the state takes over a road or street or bridge which is a part of a road constructed by an improvement district, and assumes the obligation of paying the indebtedness of the district, and of maintaining the improvement, the state acquires also the assets of the district. The $11,000 surplus is a part of the assets of the district, just as the bridge itself is, and the state takes title to all the property owned by the agency which it had created or which had been created under the authority of its laws.

The decree of the court, ordering the $11,000 surplus to be paid into the state treasury, will be affirmed, but it will be modified by striking out the limitation that this particular fund must be used in the maintenance of the Red River bridge. The money will be covered into the state treasury for the use of the state as provided by law, and the presumption will be indulged that the state will perform its obligation to maintain the bridge out of funds appropriated and available for that purpose. As thus modified, the decree is affirmed.