ARKANSAS STATE HIGHWAY COMMISSION *v.* SEBASTIAN BRIDGE DISTRICT.

4-6972                                      168 S. W. 2d 841

Opinion delivered February 22, 1943.

*Neill Bohlinger,* for appellant.

*James B. McDonough,* for appellee.

GRIFFIN SMITH, C. J.   Decision calls for construction of part of Act 6, approved January 30, 1941, under which the Highway Commission assumed maintenance of the Arkansas river bridge westward from Garrison avenue, Fort Smith.

The Commission sued Sebastian Bridge District for an accounting, contending that because the State had

paid $45,150 in discharge of the District's bonded indebtedness, funds in the District's treasury should go to the State for highway purposes, specifically to be used in the upkeep of bridges. See *Sebastian Bridge District* v. *Refunding Board,* 197 Ark. 790, 124 S. W. 2d 960; *Refunding Board* v. *Sebastian Bridge District,* 199 Ark. 944, 136 S. W. 2d 480; *State ex rel. Attorney General* v. *Sebastian Bridge District,* 204 Ark. 340, 161 S. W. 2d 955.

An allegation was that the bridge needed repairing at an estimated cost of $20,000. The District, it was averred, had assets which should be made available to the Highway Commission. It was asked that a commissioner in chancery be appointed to state an account and that all of the District's funds be transferred to the State.

Answer was filed when the District's demurrer and motion to dismiss were overruled. Fagan Bourland, owner of real property assessed for betterments, intervened for himself and others similarly situated. Bourland contended, as did the District, that landowners had vested interests in moneys collected under the assessments. Other defenses were interposed. On reconsideration the chancellor vacated the order overruling the demurrer. From the court's act in sustaining the demurrer comes this appeal.

The decision of February 13, 1939,[1] is determinative of the proposition that in paying bridge district bonds the State acted voluntarily. It was further held that there was no express or implied condition in the legislation considered requiring the District to exhaust its own balance or to spend any of it as a condition precedent to State aid. Act 6 does not strengthen the State's claim to the fund. If authority to reach the end desired by the Highway Commission is to be found in the Act, it must arise from an inference that the Legislature *intended* to make bridge district money available. The question would then be presented whether landowners had vested interests in these assets. There is no language in Act 6 justifying the construction contended for by the State.

---

[1] 197 Ark. 790, 124 S. W. 2d 960.

In *Red River Bridge District* v. *State,* 201 Ark. 365, 144 S. W. 2d 723, the State's act in appropriating an eleven-thousand-dollar balance held by the bridge commissioners and applying it to maintenance was upheld because the money came from tolls. It was said that a different question would be presented if the surplus had arisen from betterments assessed against lands.

The Fort Smith District received certain sums from rentals paid by utilities corporations. This fund would fall within the rule announced in the Red River case and the State would be entitled to net balance in the district commissioners' hands which arose from such source. Such commissioners are also charged with the duty of collecting delinquencies from property-owners, and with the further duty of disposing of lands bid in at foreclosure sales.

The court's determination that betterment collections did not go to the State was correct; hence to the extent that these funds are involved the demurrer was properly sustained. The cause, however, is remanded with directions to ascertain the amount due in consequence of rentals.

SMITH, McHANEY and HOLT, JJ., dissent.

SMITH, J., (dissenting). The bridge district was created by act 104 of the Acts of 1913, and it was contemplated by this act that the bridge should be constructed and paid for by assessments of benefits upon property located in the district, and that when the bridge had been built and paid for its maintenance should be turned over to the only agency then existing having that authority, with the proviso that "in the event the bridge is not taken over by the public authorities as herein authorized as a public highway after the improvement as herein provided for is paid, to annually levy assessments upon the real property in said district for the maintenance of said bridge." In other words, it was the legislative intent expressed in the act, pursuant to the powers there conferred, to build the bridge and, after it had been paid for, to turn it over to "the public authorities" for maintenance.

That "public authority" is now the State Highway Commission, and it has assumed this duty of maintenance, and proposes now to expend $20,000 in repairs, a sum larger than the amount of cash the district now has on hand derived, not only from the collection of betterment assessments, but, in part, from rents and tolls collected in connection with the operation of the bridge. This power of maintenance has now been delegated to another agency, the State Highway Commission, and the General Assembly had the power, which it has exercised, of redelegation. *Yale University* v. *New Haven,* 104 Conn. 610, 134 Atl. 268, 47 A. L. R. 667; *Illinois Iron Company* v. *Commissioners of Lincoln Park,* 263 Ill. 446, 105 N. E. 336, 51 L. R. A., N. S., 1203.

There is immediately a substantial benefit to the landowners in the district which, under the legislation, pursuant to which the state has assumed the obligation of maintenance, will continue without the imposition of taxes for maintenance purposes for which the act creating the district provided. The landowners have not been deprived of their property in the bridge, nor have they been deprived of its use; on the contrary, this use without further costs to the property owners has been assured, but upon the condition only that the state take over the assets of the district, including the cash on hand.

This statement appears in § 461, Vol. 1, Sloan on Improvement Districts in Arkansas: "Inasmuch, however, as the property owner is interested only in receiving the benefits in return for the local assessments paid or to be paid, there is no constitutional objection, from the standpoint of the property owner, to abolishing an existing improvement district if provision be made at the same time for a new improvement district or for some other public agency to construct, maintain or operate the improvement, as the case may be. Thus, the general law that waterworks, gas or electric light works constructed by a municipal improvement district shall be operated and maintained by the municipal council or a special act that a bridge constructed partly with funds furnished by a municipal improvement district shall be turned over to the county does not infringe upon any

right of the property owner in the district because he will still receive the same benefit from the improvement.''

In the case of *Commissioners* v. *Quapaw Club,* 145 Ark. 279, 224 S. W. 622, it was held, to quote a headnote, that: ''1. Bridges—Provision for Turning Over to County.—Special Laws 1919, p. 74,. creating an improvement district for constructing two bridges across the Arkansas River at Little Rock, provides (in § 23) that 'when said bridges have been completely paid for they shall be turned over to the county of Pulaski, and from thenceforth shall be the property of said county, *held* not invalid as depriving the property owners in the district of their property rights in such bridges.''

It was contended in that case that the owners of real property have rights in the property of which they cannot be deprived by having the bridge turned over to the county, and the case of *Augusta* v. *Smith,* 117 Ark. 93, 174 S. W. 543, was relied upon as sustaining the contention that the owners of real property in a local improvement district have property rights which cannot be transferred without their consent. In overruling that contention, it was there said: ''There is nothing in that opinion *(Augusta* v. *Smith)* to warrant the conclusion that it is beyond the power of the Legislature to authorize a transfer of the improvement to any public agency to operate for the benefit of the owners of the property in the district. In fact, we inferentially upheld the statute which provides that waterworks constructed as a local improvement in a city or town could be taken over by the municipality and operated. The statute now under consideration authorizes the turning over of the property to the county, which is a public agency and does not disturb the rights of the public or of the property owners within the boundaries of the district.''

In the case of *Red River Bridge District* v. *State, ex rel., State Highway Commission,* 201 Ark. 365, 144 S. W. 2d 723, a bridge improvement district had constructed a bridge which was an integral part of the state's highway system. In the act creating the district

provision was made for the collection of betterment assessments, but later the bridge was converted into a toll bridge. The state took over the operation and maintenance of this bridge, and insisted that it was entitled to the cash on hand derived by the district from the collection of tolls for the use of the bridge. We there said: "We think the court was correct in ordering the surplus funds covered into the state treasury. The district has fully performed all the functions for which it was created. The bridge is an essential part of highway 71—a unit in the state's highway system. The state has assumed the obligation of maintaining and operating the bridge, and it is stipulated that this obligation is being performed, and it must be assumed that the state will continue to perform the obligation it has undertaken."

We there said a different question would be presented had the surplus funds on hand been derived from the collection of betterment assessments, but by this statement we merely reserved for future decision a question not there presented. But, after reserving this question, we proceeded to say: "In other words, the holding is that, where the state takes over a road or street or bridge which is a part of a road constructed by an improvement district, and assumes the obligation of paying the indebtedness of the district, and of maintaining the improvement, the state acquires also the assets of the district. The $11,000 surplus is a part of the assets of the district, just as the bridge itself is, and the state takes title to all the property owned by the agency which it had created or which had been created under the authority of its laws."

Many road improvement districts in this state had been created by various special acts, and the affairs of many of them became so involved that the state, by act No. 11 of the Acts of 1927, took them all over and assumed charge of them and the payment of their outstanding bonds. No one has ever doubted the wisdom and necessity of this action, or the power of the General Assembly to take it. But having assumed those obligations the General Assembly, at the same session, by act

112, p. 312, provided that where the roads of a district were taken over to be maintained by the state, the funds of the district should also be turned over to the state. Under this act 112 the state did not assume the payment of the obligations of all the road improvement districts in the state, but only the obligations of those districts whose roads were made a part of the state highway system. The validity of this act and its application to a district in which only a part of its roads was incorporated into the state highway system was the point involved in the case of *State, ex rel., Attorney General,* v. *Little Rock-Highland Paving District No. 24,* 199 Ark. 430, 133 S. W. 2d 878. There a road improvement district had cash on hand derived from betterment assessments, but there were portions of the roads in that district which had not been incorporated into the state's highway system. It was there said: "If the roads of a district are taken over, then the funds on hand shall also be turned over to the state. If a part only of the roads is taken over, then only a part of the funds are taken on a mileage basis. If no part of the district's roads are taken over, then the state takes no part of the funds on hand."

A proper and clear statement of the authority upon which betterment assessments are upheld in improvement districts is contained in the brief of appellant from which we copy this statement: "The property owners in an improvement district acquire no proprietary rights in the improvement which is created. They are not in a position of shareholders in a corporation, and they pay in their assessments only because it can be shown that the creation of the public improvement confers upon their property an advantage or benefit greater than that enjoyed by other property. That is the only theory upon which the taxes or assessment of betterments can be based. Without the showing of the particular benefit to the property in the district the whole project fails. The amount of money that the property owner pays in represents the amount which the public improvement benefits his property, and he has value received in that betterment and not a proprietary interest in the structure nor the assets of the district."

A headnote to the case of *Williams* v. *Fort Smith*, 165 Ark. 215, 263 S. W. 397, reads as follows: "Municipal Corporations—Rights of Abutting Owner.—The taxpayers of an improvement district, neither as such nor as abutting owners, have any proprietary interest in the street or in the discarded materials formerly used in paving the street by reason of the fact that they were paid for by taxation on benefits to adjacent property."

Act No. 6 of the Acts of 1941 has imposed upon the state a new and a very heavy burden which the State Highway Commission is attempting to discharge. In doing so, the state is not attempting to deprive the property owners of the bridge for which their taxes were paid, nor is there any attempt to interfere with the use for which the bridge was intended. It is proposed only to use assets of the bridge district to pay a part—a small part—of the expenses which the property owners would otherwise have to pay without aid from the state.

I make no review of or comment upon the cases in 197 Ark. 790, 124 S. W. 2d 960; 199 Ark. 944, 136 S. W. 2d 480, and 204 Ark. 340, 161 S. W. 2d 955, cited in the majority opinion, as the questions there decided have no bearing upon the questions here presented.

I, therefore, dissent from the majority opinion; and I am authorized to say that Justices McHaney and Holt concur in the views here expressed.