PAGE, TREASURER *v.* STREET IMPROVEMENT DISTRICT No. 11 OF RUSSELLVILLE.

4-6699 and 4-6717 (consolidated)        158 S. W. 2d 905

Opinion delivered January 26, 1942.

658

*Jack Holt,* Attorney General; *Jno. P. Streepey,* Assistant Attorney General; *Neil Bohlinger* and *Herrn Northcutt,* for appellant.

*Caudle & White, Norton & Butler, Mann & McCulloch* and *Marvin B. Norfleet,* for appellee.

*Fuller & Russell, amici curiae.*

GRIFFIN SMITH, C. J. December 13, 1941, Earl Page, as treasurer of state, and the state highway commission, appealed from a Pulaski chancery court decree rendered in a cause wherein exceptions had been filed by Paving Improvement District No. 11 of Russellville, and Annexes Nos. 1 and 2 to District No. 11.

Acting, as it thought, within the provisions of Act No. 385, approved March 26, 1941, (p. 1045), the commission determined total cost of that part of the paving district and the two annexes that represented highway continuations which, on or before January 1, 1939, were located within the corporate limits of Russellville, inclusive of the elements specified for consideration in subdivision (a) of § 10 of Act 385. The treasurer found the district to be entitled to $10,050.68. Annex No. 1 was shown to be entitled to $4,079.77, while Annex No. 2 should receive $7,656.91.

In its exceptions District No. 11 listed unpaid bonds for 1938, 1939, 1940, and 1941. It also showed that in 1942 $5,000 in bonds would fall due, and a like sum in 1943. Interest for 1941, 1942, and 1943 was $1,012.50, the total of interest and principal, inclusive of the 1943 obligation, being $28,712.50.

Past-due bonds of Annex No. 1 (1938, 1939, and 1940) amounted to $10,500, with default interest of $367.51, the entire debt being $10,867.51.

Bonds of Annex No. 2 (1938, 1939, 1940, and 1941) amounted to $26,500, with interest aggregating $1,562.50, the total being $28,062.50.

*District No. 11.—Exceptions.*—It is contended that $37,939.65 formerly paid the district under Acts 8, of 1928, 248, of 1931, and cash received from three per cent. bonds issued under Act 11 of 1934, was paid on the district's then outstanding bonds and interest, or used in purchase of bonds. After crediting state aid, bonds and interest as of July 1, 1941, amounted to $28,712.50, as heretofore shown.

*Annex No. 1.—Exceptions.*—The sum of $22,441.14 paid under authority of Act 8 of 1928, and cash received from three per cent. bonds issued to the district under Act 11 of 1934, it is stated, was paid on obligations, leaving an indebtedness of $10,867.51 as of July 1, 1941.

*Annex No. 2.—Exceptions.*—Payments received by the district under Act 8 of 1928, and cash realized from bonds issued pursuant to Act 11 of 1934, amounted to $36,607.77. Indebtedness as of July 1, 1941, was the item of $28,062.50 formerly mentioned.

The attorney general, on behalf of the highway commission and the treasurer of state, filed demurrers. When the demurrers were overruled the state refused to plead further; whereupon the exceptions were sustained and judgment rendered for the amount requested in each case.

*Forrest City District.*—North and South Washington Street Improvement District No. 1 of Forrest City applied for state aid under Act 385. The treasurer found it was entitled to $9,292.22. Bonds payable from 1942 to 1952 total $77,000, with interest of $25,075. State aid received under Acts 8 of 1928, 248 of 1931, and proceeds of state bonds issued to the district under Act 11 of 1934, amounts to $106,022.40. Current assets are $22,449.58, with no current liabilities.

Exceptions filed October 21, 1941, listed legal services at $1,263.26, and "extra work" at $496.84, a total of $1,760.10. The district asked that this sum be added

to the item of $9,292.22 approved by the treasurer, and that it receive $11,052.22 as state aid.

November 8 the exceptions were amended. It was contended that the commission and treasurer erred in not allowing interest from Oct. 1, 1930 to maturity on all bonds at the rate of five per cent. per annum, amounting to $77,766.67.

The commission's report fixed total cost of construction at $115,314.62.[1] Interest computed on all bonds until maturity amounts to $56,693.82, after deductions were made, as shown in the footnote. It is contended that there should be added to such sum the item of $1,760.10—a total of $58,453.92. After crediting this sum with $9,292.22, certified by the treasurer to be due, the balance would be $67,746.14. The trial court gave judgment for the additional sum of $58,453.92. The state appealed December 29.[2]

The four districts—three at Russellville and one at Forrest City—constitute improvements that are continuations of state highways: that is, the full area of each district is classified as a highway continuation.

*Source of Funds.*—Section 12 of Act 4, approved January 28, 1941, commonly referred to as the Bond Refunding Law, creates certain priorities. It then provides that the next $750,000 received during each fiscal year shall be set aside for the payment of bridge improvement bonds and interest "which come under Act 330 of 1939; the payment of road district bonds and interest thereon which come under Act No. 325 of 1939; the payment of outstanding bonds and interest thereon' issued by the municipal paving districts organized prior to January 1, 1939, which represent the cost of paving, gutters, curbs and aprons on streets and intersections

---

[1] Although the highway commissioner's report fixes cost of construction at $115,314.62, bonds aggregating $121,000 were issued, the interest rate being 5 per cent. The bonds are dated October 1, 1930.

[2] The sum of $56,693.82 listed in paragraph (c), p. 7, of appellee's brief is arrived at in this way: (c) Interest on bonds issued by the district, agreed statement, transcript pages 14, 15, 16. Scheduled interest on bonds, $77,766.67. Less interest received by district on certificates of indebtedness, $13,127.26. Less interest paid under act 8 of 1928 and act 248 of 1931, $7,945.58. Result, $56,693.82.

forming a continuation of state highways through such municipalities; the payment of outstanding bonds and interest thereon issued by improvement districts for the construction of bridges across navigable streams of the state; and for aid to cities and towns for the construction, repair and maintenance of streets and county roads in and immediately adjacent to such cities and towns—as the legislature may from time to time prescribe."

No appropriation of any of the funds intended for the purposes enumerated was made in Act 4, nor did the Act apportion the money to the expectant recipients; hence, it was necessary that additional legislation supply the omission. The answer is found in Acts 192, 427 and 385 of 1941.

*Allocations.*—Act 385 went farther than Act 4. It provides that from the first revenues available in each fiscal year for the purposes for which the conditional allocation of $750,000 was made in Act 4, $200,000 "or so much thereof as will be sufficient when added to the unencumbered balance in said fund," be dedicated to payment of bridge improvement district bonds and interest "as the same mature during each fiscal year."

The next allocation is $140,000, "or so much thereof as will be sufficient when added to the unencumbered balance in said fund," to pay principal bonds and interest issued by "farm-to-market" road districts, "as the same mature during each fiscal year." [3]

Section 4 of Act 385 is: "All revenues which may become available in each fiscal year for the purpose of the $750,000 allocation provided in § 12 of Act 4 . . . in excess of the first $340,000 shall be transferred by the treasurer of state to the following funds in the percentages indicated: (a) 45.12 per cent. of such excess during each fiscal year to the municipal bond retirement fund, to be expended in the manner heretofore provided; and (b) 54.88 per cent. of such excess to the municipal turnback fund to be expended in the manner hereinafter provided."

---

[3] Sec. 3 of Act 385 contains a proviso whereby deficiencies in the farm-to-market road district obligations may be recouped from the county gasoline turnback fund.

It is further directed that at the close of each fiscal year the municipal turnback fund should be credited with the amount that the allocation to the bridge bond retirement fund exceeds the debt service requirement,[4] also with the amount the road bond redemption account and the municipal bond retirement fund exceed debt service requirements.

*Conditions Precedent.*—Section 6, as a condition precedent to receipt of state aid, requires that the board of commissioners, the receiver, or the attorney of each bridge improvement district, each farm-to-market road district, each municipality or municipal paving district, file with the treasurer of state a certificate containing the information mentioned in the section. Additional information is required by § 7. It includes (a) statement of current assets, including cash on hand and in banks; State of Arkansas refunding certificates of indebtedness, "sometimes called refunding obligations"; other bonds, notes and certificates; liquid assets in the hands of paying agents in excess of current maturities of principal and interest; and all other current assets, exclusive of delinquent taxes, machinery, and equipment. (b) Current liabilities, including accounts payable, notes payable, unexecuted contracts, "and any and all other current liabilities."

After the first remittance has been made to any district, the commissioners are required to file with the treasurer of state a summary or statement of receipts and disbursements "for the six-months period ending with the first of the month next preceding such principal and interest due-dates." The statement must be supplied before the interest-paying period following the first payment, and before maturity of bonds eligible for payment. Other information may be demanded by the treasurer.

As to bond maturities and interest due by any bridge improvement district, the treasurer is directed to make

---

[4] Act 183, approved March 22, 1935, Pope's Digest, § 6621; Acts 9 and 10, approved April 1, 1938. See *Sebastian Bridge District* v. *State Refunding Board*, 197 Ark. 790, 124 S. W. 2d 960.

payments "as the same become due," less deduction corresponding with such district's unencumbered cash.[5]

Bonds and interest pertaining to farm-to-market road districts are payable, substantially, in the same manner as bridge district bonds.

*Municipal Improvement Districts.*—Section 10 of Act 385 is a mandate to the treasurer of state to make payments in favor of "certain paving districts," the amounts "to be determined in the manner hereinafter prescribed." Omitting nonessentials, the plan is that aid be extended districts having bonds or interest as of July 1, 1941, exceeding current assets as defined in § 7, nor may such district receive aid in an amount greater than the difference between its outstanding bonds and interest, and its current assets.

The third paragraph of § 10 departs from the plan of payment applicable to bridge districts and farm-to-market road districts. Upon request of the treasurer of state, the highway commission is required to determine what amount shall be paid from the fund. The exact wording of the paragraph is that the commission "shall determine the amount of state-aid to be extended to each municipality or paving district coming under the provisions of this Act." The next sentence is: "The amount of state-aid . . . shall be arrived at in the following manner." It will be noted that the word "amount" appears in each sentence.

Subdivision (a) of § 10 requires the highway commission to ". . . determine the total cost of that part of each paving district or municipality representing a highway continuation which, on or before January 1, 1939, was located within the corporate limits of the city or town, and such cost shall include grading, draining, surfacing, gutters, curbs, and returns to the property lines contingent to such highway continuation."[6]

---

[5] There are other conditions not material to this opinion. See second and third paragraphs of § 8, Act 385 (1941).

[6] "The commission shall add to such costs, that certain part of the attorney's fees, laboratory testing fees and engineering fees in the amount of the percentage of the total of such fees that the area of that part of the highway continuation of the district or municipality within the corporate limits of the city or town bore to the total area of the entire district."

Subdivision (b) directs the treasurer "to deduct from the total cost of that part of the district or munici-- pality representing the highway continuation within the city or town (as determined in subsection [a] of this section)" the items shown in the footnote.[7]

A proviso is that in determining the amount of aid formerly given, the treasurer of state shall charge each district with the amount it actually received from the sale of refunding certificates of indebtedness, ". . . but in no event with less than 75 per cent. of the par value of such certificates."[8]

*Construction of Acts 4 and 385.*—As we have seen, Act 4 does not appropriate money in the sense contemplated by Art. 5, § 29 of the constitution; neither does it supply the machinery by which the conditional allocation of $750,000 may be made. It was therefore necessary that the general assembly authorize particular expenditures. The purpose of Act 385 was to express the legislative intent, which it did by designating the manner of apportioning the $750,000 allocated to the various funds, and by determining the manner of ascertaining the extent of the obligations it proposed to discharge. It created within the treasury two new funds—the municipal bond retirement fund, and the municipal turnback fund—and provided for reallocation of certain amounts that might accumulate after express payments had been made.

Act No. 4, having been referred to the people, approved, and its principal purpose to refund highway obligations issued under authority of Act 11 of 1934 having been consummated, it became a contract between the state and its creditors, and is not subject to legislative

[7] Such deductions are ". . . the total amount of aid heretofore extended such district or municipality under the provisions of Act 8 of the Acts of the Extraordinary Session of the Forty-sixth General Assembly, approved October 3, 1928; [the aid extended by] Acts 85 and 248 of the Acts of 1931, approved March 3, 1931; [the aid extended by] Act 11 of the Acts of the Second Extraordinary Session of the Forty-ninth General Assembly, approved February 12, 1934."

[8] Par value of refunding certificates of indebtedness received by the Forrest City district was $102,329.34. Sales netted the district $70,126.31. April 17, 1935, $29,000 of the certificates were marketed at 74 cents, the district receiving $22,591. Other sales were at 76 cents, 85 cents, and finally 100⅝.

alteration in any manner that would impair the obligation. Act 4, as it applies to the case at bar, does not attempt to pledge the faith and credit of the state, or any of its revenues, to the payment of bridge, road, and municipal bonds. It is only a declaration of policy by which funds may be applied to assist the districts. That actual payment cannot be made under Act 4 was a detail, subject to legislative authorization.

Act No. 4 *permits* payment of municipal improvement district bonds and interest. Just *how* payment may be made, and whether presently or in the future, in whole or in part—these are considerations addressed to the general assembly. It attempted to dispose of the involved problems through passage of the bill which became Act 385. The question for judicial determination is, What restrictions did the law-making body have in mind when, by § 10, it directed the treasurer of state to pay certain districts *"amounts to be determined in the manner hereinafter prescribed,"* and then delegated to the highway commission the duty of determining *"the amount of state aid,"* according to the formula prescribed in subdivisions (a) and (b).

First, it is required that the "total cost" of *that part of the paving district* representing a state highway continuation be ascertained. Whether "that part of the *district"* is synonymous with "that part of the *paving"* is not made clear. More than fifty per cent of the area of a district might be paving other than a highway continuation, but the continuation could represent more than fifty per cent of the cost of construction. Different widths, different materials, expense of excavation, drainage, and other items could tip the balance either way.

Computations by the commission show that "cost," as defined by its engineers in respect of highway continuations in 120 districts, will involve an expenditure of $542,826.37. Par value of bonds outstanding as of July 1, 1941, is shown to have been $2,973,200. Interest to maturity would be $781,500, a total of $3,754,700. The highway commission's comment is: "By applying the ratio (determined for each district) of the area of pave-

ment constructed on state highways to the total area paved by the district, to the outstanding bonds and interest of that district, the following summary is derived: Ratio of bonds outstanding as of July 1, 1941, $1,356,500; ratio of scheduled interest, $304,500; ratio of bonds and interest, $1,661,000.''

During the first year under Act 4 $184,992 will be credited to the municipal bond retirement fund, representing the 45.12 per cent. allocated by § 4 of Act 385. Act 427, approved March 31, 1941, directs the treasurer to transfer $150,000 from the state highway fund and place it to the credit of the municipal bond retirement fund.[9] The same Act appropriates $150,000 from the municipal bond retirement fund ". . . to be expended for the purposes now provided. . . .''

Allocations in Act 427 are for a single year, although the appropriation is effective for two years. As to Act 385, its revenues of $184,992 for 1941-42 are supplemented by the item of $150,000 available from Act 427, making a total of $334,992 for 1941-42. In future years $184,992 will be credited to municipal bond retirement fund if sufficient revenues are collected to maintain the sequential priority item of $750,000. See § 12, Act 4.

Under the construction of Act 385 given by the chancellor, judgments estimated to aggregate $1,661,000 would result if all districts applied for aid on the basis contended for by appellees in the four consolidated cases we here consider. With $334,992 available prior to July 1, 1942, the deficiency would be approximately $1,326,000. The judgments appealed from amount to $135,388.65. This represents 40.4 per cent. of $334,992, leaving 59.6 per cent. for 116 other districts, or $199,604, minus, to be shared between them.

It is our view that the legislative intent was to extend aid to the districts equal to 100 per cent. of the cost of construction of that part of the improvement representing a state highway continuation, from which

---

[9] An additional $150,000 is authorized to be taken from the highway fund for construction, repair, and maintenance of city streets and county roads.

is to be deducted aid heretofore given under various Acts; provided that the aid be limited to an amount not greater than outstanding bonds and interest of the district as of July 1, 1941, less current assets as defined by Act 385.[10]

The decree and judgments are reversed, with directions to modify such judgments conformable to findings made by the treasurer on information supplied by the highway commission and data on file in the treasurer's office.

## OPINION ON REHEARING

It is insisted the court overlooked two items claimed by appellee and allowed by the chancellor: one for $1,263.26, the other for $496.84.

An agreed statement is that $1,263.26 was paid as attorney's fee incident to the bond issue, in defending a chancery suit, and for expenses of the attorneys—the last item being $13.26 for travel.

The highway department's report of August 7, 1941, prepared and filed under authority of Act 385, shows total cost of the district to have been $115,314.62. State aid formerly received, as shown by treasury records, was $106,022.40. The difference between cost and payments is $9,292.22. Included in the total of $115,314.62 was $1,500 as an attorney's fee, $5,387.85 for engineering, and $1,166.53 as laboratory costs; hence, when the award of $9,292.22 was arrived at by subtracting $106,022.40 from $115,314.62, an attorney's fee and the other items referred to were included.

The agreed statement, however, concedes that $1,263.26 was paid to attorneys, and this seems to be in addition to the allowed charge of $1,500. It was not, strictly, a part of construction cost, although funds available for construction were reduced to the extent of the payment. Since Act 385 directs the commission to allow attorneys' fee, a laboratory testing costs, and engineering fees, it would probably be too technical to say the legisla-

[10] See *Smith* v. *Refunding Board of Arkansas*, 191 Ark. 1, 83 S. W. 2d 76. The opinion contains a review of the various state aid measures.

ture intended that attorney fees incident to creation of the district should be paid, but that fees for approving bonds and defending legality of the district should be excluded. It will be observed that the Act, in referring to attorneys, uses the plural possessive (attorneys').

The second item relates to $865.77 claimed to have been expended for extra work, $368.93 of which was allowed. Payment of the difference of $496.84 is asked. The agreed statement is: ". . . there is no showing anywhere as to what extra work was done amounting to $496.84, and for this reason the highway department refused [to approve it"].

The reason assigned by the highway department is sufficient.

The opinion of January 26, 1942, in cause No. 6717, is modified by directing inclusion of the fee of $1,263.26. In other respects the petition for rehearing is denied.